**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NICOLAS CONNOR BRANOM,

       Plaintiff,

v.                                           CIV No. 15-615 GBW

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant.

## <u>ORDER</u>

This matter comes before the Court on Plaintiff's Motion to Reverse and Remand the Social Security Agency (SSA) decision to deny Plaintiff Supplemental Security Income (SSI) benefits. *Doc. 19*. For the reasons discussed below, Plaintiff's Motion is DENIED, and this action is DISMISSED with prejudice.

## I.   PROCEDURAL HISTORY

Plaintiff filed an initial application for SSI benefits on April 28, 2011, with an alleged onset of disability beginning February 17, 2000. Administrative Record ("AR") at 343. Plaintiff alleged that he had a disability resulting from bipolar disorder and a learning disability as well as difficulties with memory, concentration, depression, and paranoia. AR at 347, 360-67. Administrative Law Judge (ALJ) Barry O'Melinn held a hearing on September 11, 2013. AR at 58-108. On December 4, 2013, the ALJ denied

Plaintiff's claim.  AR at 153-71.  On February 26, 2014, the SSA Appeals Council remanded the case to the ALJ for rehearing.  AR at 172-77.

On December 15, 2014, Plaintiff attended a second hearing before ALJ O'Melinn.  AR at 109-25.  The ALJ issued an unfavorable decision on January 14, 2015, concluding that Plaintiff was not disabled.  AR at 34-52.  Plaintiff again appealed the denial to the Appeals Council, which declined review on March 28, 2015.  AR at 9-16.  Plaintiff filed suit in this Court on July 14, 2015, seeking review of the ALJ's decision.  *Doc. 1.*

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*, 933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.   PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by (1) failing to properly evaluate the opinion evidence of Dr. John Owen and Dr. Paula Hughson and (2) failing to properly evaluate Plaintiff's credibility.  The Commissioner asserts that the ALJ (1) provided good reasons for the weight he gave to Dr. Owen's and Dr. Hughson's opinions in the overall context of the decision and (2) properly evaluated Plaintiff's credibility.  Ultimately, the Court concludes that the ALJ did not err and therefore the opinion should not be disturbed.

## IV.   ALJ EVALUATION

### A.  Legal Standard

For purposes of Supplemental Security Income benefits, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.A. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.

If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience.  *Grogan*, 399 F.3d at 1257.

**B.  The ALJ's Decision**

On January 14, 2015, the ALJ issued a decision denying Plaintiff's application for benefits.  AR at 34-52.  In denying Plaintiff's application, the ALJ applied the required five-step sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his application date of April 28, 2011.  AR at 39-40.  At step two, the ALJ determined that Plaintiff had the severe impairments of mood disorder, post-traumatic stress disorder, attention deficit disorder, attention deficit hyperactivity disorder, and anxiety.  AR at 40-41.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  AR at 41-44.

At step four, the ALJ determined that Plaintiff had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has the ability to understand, carry out and remember simple instructions. He can make commensurate work-related decisions and can respond appropriately to supervisors, coworkers and work situations. [He] can deal with routine changes in work setting, and he can maintain concentration, persistence and pace for 2 hours with normal breaks throughout a normal work day.  [He] is suitable for jobs with no interaction with the public, and while he can be around

5

coworkers throughout the day, he can have only occasional interaction
with them.

AR at 44.  The ALJ also found that Plaintiff had no past relevant work.  AR at 50.  At

step five, the ALJ found that Plaintiff could perform jobs that existed in significant

numbers in the national economy, including positions as a packer, laundry worker, and

hay sorter.  AR at 50-51.

V.   ANALYSIS

A.   The ALJ Did Not Err in Explaining the Weight Given to the Examining
Medical Source Opinions

Plaintiff claims that the ALJ erred in evaluating the respective opinions of Dr.

Owen and Dr. Hughson, two agency consultative examiners.  *Doc. 19* at 10-13.  In

determining a claimant's RFC, an ALJ "is required to consider all of the claimant's

medically determinable impairments, singly and in combination," and a failure to do so

is reversible error.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  While an ALJ

"need not discuss all of the evidence in the record, he may not ignore evidence that

does not support his decision, especially when that evidence is significantly probative."

*Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotation omitted).

To determine what weight to give to a medical opinion, the ALJ must consider

the following factors:

(1) the length of the treatment relationship and the frequency of
examination; (2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or testing
performed; (3) the degree to which the physician's opinion is supported

6

by relevant evidence; (4) consistency between the opinion and the record
as a whole; (5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to the ALJ's
attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); *see also*

*Kilpatrick v. Astrue*, 502 F. App'x 801, 806 (10th Cir. 2012).   Further, in attributing

comparative weight to inconsistent recommendations of multiple medical opinions,

"[t]he opinion of an examining physician is generally entitled to less weight than that of

a treating physician, and the opinion of an agency physician who has never seen the

claimant is entitled to the least weight of all."   *See Robinson v. Barnhart*, 366 F.3d 1078,

1084 (10th Cir. 2004) (citing 20 C.F.R. § 416.927(1), (2) and SSR 96–6p, 1996 WL 374180,

at *2).

   As an initial matter, the Court disagrees with Plaintiff's contention that the RFC

found by the ALJ significantly conflicts with the opinions of Dr. Owen and Dr.

Hughson.  *See doc. 19* at 12.   Indeed, the ALJ's decision regarding Plaintiff's RFC is

largely consistent with their opinions.   Dr. Owen found moderate limitations in

Plaintiff's ability to understand and remember detailed or complex instructions and

adapt to changes in the workplace, as well as "moderate to marked" limitations in

Plaintiff's ability to: carry out instructions; attend and concentrate; work without

supervision; and interact with the public, co-workers, and supervisors.   AR at 504-5.   In

addition, Dr. Owen found only a mild difficulty in Plaintiff's ability to understand and

remember simple instructions.  *Id*.  Dr. Hughson concluded that Plaintiff had only mild

or "mild to moderate" limitations in his ability to understand and remember short and simple instructions and carry out instructions, as well as moderate limitations in his ability to: understand complex instructions; attend and concentrate; work without supervision; and interact with the public, co-workers, and supervisors. AR at 621. While a mild or moderate impairment is not the same as no impairment, both signify that a patient still maintains the ability to function in the area evaluated. *See Chapo v. Astrue*, 682 F.3d 1285, 1289 n.2 (10th Cir. 2012).

The ALJ's determination of Plaintiff's RFC incorporates these opinions by acknowledging Plaintiff's ability to: understand, carry out, and remember only "simple instructions;" adapt to only "routine changes in work setting;" maintain concentration and pace for two hours at a time with normal breaks; and interact occasionally with coworkers but not with the public. AR at 44. These findings are generally consistent with the opinions of the consulting examiners. Nonetheless, as there arguably remains some tension between Plaintiff's RFC and the opinions of Dr. Hughson and Dr. Owen, the Court will consider whether the ALJ erred in ascribing a particular weight to these medical opinions or in explaining the reasons for any such finding of weight. *Briggs*, 248 F.3d at 1239; 20 C.F.R. § 416.927(d)(2).

Here, the ALJ stated that he gave "[s]ome weight" to Dr. Owen's and Dr. Hughson's opinions based on their status as acceptable medical sources and their familiarity with agency regulations. AR at 50. However, the ALJ also chose, in some

8

instances, to favor "the opinions of the physicians at Anna Kaseman and [the University of New Mexico Hospital] (UNMH)"[1] as well as the state agency non-examining psychiatrist and psychologist to determine Plaintiff's specific residual functional capacity.  *Id*.  The ALJ properly considered that the treating physician at Anna Kaseman deemed Plaintiff competent and noted that his Global Assessment of Functioning ratings "showed rapid recovery with treatment."  AR at 45; *see also* AR at 463-64.  In addition, the ALJ noted that the psychiatrists at UNMH's Psychiatric Urgent Care Clinic ruled out a diagnosis of bipolar disorder, instead diagnosing a mood disorder.  AR at 47; *see also* AR at 553.  Further, both Dr. Scott Walker and Dr. Donald Gucker, the non-examining psychiatrist and psychologist, found Plaintiff "not disabled," concluding that Plaintiff "can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." AR at 134-35, 150-51.

An ALJ is entitled to adopt some of the restrictions identified by the examining medical source while discounting others.  *Chapo*, 682 F.3d at 1291.  However, the decision to reject portions of an examining physician's medical opinion "must be based

---

[1] While these physicians were responsible for providing Plaintiff with medical care, their opinions are not entitled to the controlling weight afforded to a treating physician since the ALJ does not identify any single physician at these institutions who possessed a significant treatment history with Plaintiff.  *See* AR at 45-47; *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir.2003).  Additionally, while diagnostic findings of treating professionals are relevant to Plaintiff's RFC, they are afforded less weight where they do not offer specific opinions regarding "plaintiff's capacities, limitations, or restrictions."  *McMillan v. Barnhart*, No. 05-4121-JAR, 2006 WL 4050691, at *7 (D. Kan. Oct. 18, 2006).

on an evaluation of all of the factors set out in the cited regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Id.*; *see also* 20 C.F.R. § 416.927(d)(2). The ALJ's explicitly proffered reasons for limiting the weight attributed to Dr. Owens' and Dr. Hughes' opinions were that their opinions were (1) "based on a single meeting with [Plaintiff]" and (2) "based entirely on [Plaintiff's] subjective representations." AR at 50. These justifications present a legitimate reason to discount the opinion of an examining medical professional, especially to the extent it conflicts with the opinions of other relevant medical professionals.

It is true that the consultative examination process, as codified by SSA regulations, has some inherent value which may not be outright ignored. *See* 20 C.F.R. § 416.917 (requiring consultative examination for determining disability in the absence of other sufficient medical evidence). In addition, an ALJ may not reject a psychologist's opinion in favor of a lay opinion merely because "the practice of psychology" inherently involves "a patient's subjective statements." *Thomas*, 147 F. App'x at 759-60. However, in the comparative evaluations of competing medical source opinions, an ALJ is required to consider the length and the frequency of an examination as well as the nature and extent of the treatment relationship. *Goatcher*, 52 F.3d at 290. Indeed, case law within the Tenth Circuit has held that an examining medical source opinion may be rejected where such opinion is "based . . . on a single, subjective report" of the Plaintiff and is "not supported by the evidence of record." *See Flaherty v. Astrue*, 515 F.3d 1067,

1070 (10th Cir. 2007); *see also Quintana v. Colvin*, No. 11-CV-01261-PAB, 2014 WL

1292906, at *3 (D. Colo. Mar. 31, 2014); *Blevins v. Colvin*, No. 12-1411-SAC, 2014 WL

1246761, at *5 (D. Kan. Mar. 26, 2014) (affirming decision where "[t]he ALJ gave little

weight to [the examiner]'s opinions because the opinions were based on a single

evaluation of the plaintiff and there was no treatment relationship").

The Commissioner urges this Court to uphold the step-four determination on the

basis that facts referenced elsewhere in the ALJ's decision demonstrate that "Dr. Owen

and Dr. Hughson's opinions did not deserve great weight."  *Id.* at 10.  In support of this

argument, the Commissioner highlights several instances in which the opinions of Dr.

Owen and Dr. Hughson "diverged from the treatment record," including inconsistent

testimony regarding the severity of Plaintiff's paranoia, his level of intelligence, and

whether his mental health issues meet the criteria for a diagnosis of bipolar disorder.

*Id.* at 9-10.  Though not explicitly identified as inconsistencies, the ALJ did note these

facts which contradict the opinions of Dr. Owen and Dr. Hughson within his decision.

*See* AR at 48-49.

In light of these opinions' inconsistencies with other evidence in the treatment

record, the Court finds that the ALJ provided sufficient justification to partially

discount the opinions of Dr. Owen and Dr. Hughson in favor of opposing medical

opinions on the basis that their conclusions were based on a single examination and

relied solely on the subjective representations of Plaintiff.  *See Flaherty*, 515 F.3d at 1070;

*Blevins*, 2014 WL 1246761, at *5.

### B.  The ALJ Did Not Err in His Determination of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility and contends

that the adverse credibility finding cannot form the basis for concluding that Plaintiff

remains able to work.  *Doc. 19* at 14-17.

Credibility determinations are within the province of the ALJ, and the Court

should generally defer these determinations.  *Castellano v. Sec'y of Health & Human Serv.*,

26 F.3d 1027, 1030 (10th Cir. 1994) (citing *Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir.

1988)); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations

omitted).  When assessing a claimant's credibility, the ALJ considers the following

factors:

> (1) The claimant's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or
>     other symptoms;
> (3) Factors that precipitate or aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the
>     claimant takes or has taken to alleviate symptoms;
> (5) Treatment, other than medication, the claimant receives or has received for
>     his symptoms;
> (6) Any measures other than treatment the claimant uses or has used to alleviate
>     his symptoms;
> (7) Any other factors concerning the individual's functional limitations and
>     restrictions due to his symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p (1996).

The ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record . . . includ[ing] the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* at *2.  The ALJ's opinion must contain "specific reasons" for his credibility findings that are "closely and affirmatively linked" to evidence in the record. *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004).  However, a credibility determination "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As an initial matter, Plaintiff correctly notes that "a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled." *Doc. 19* at 14 (quoting SSR 96-7p)  However, it is clear from the record that the ALJ did not rely exclusively on his determination of Plaintiff's credibility to reach a decision regarding his disability.  Rather, the ALJ supplemented credibility determinations with the medical source evidence from treating professionals at Anna Kaseman Hospital and UNMH as well as the non-examining psychiatrist and psychologist to determine that Plaintiff's RFC enabled him

to perform jobs existing in significant numbers.  AR at 49-51.  Thus, the ALJ did not attribute disproportionate weight to his credibility determination in evaluating whether Plaintiff was disabled.  *See Thompson v. Sullivan*, 987 F.2d 1482, 1491(10th Cir. 1993) (finding that an ALJ's credibility determination, while itself not dispositive, is a permissible "step on the way to the ultimate decision").

In determining that Plaintiff's credibility was suspect, the ALJ pointed to: (1) the Plaintiff's range of daily activities; (2) the Plaintiff's inconsistent factual statements; and (3) Plaintiff's history of not pursuing recommended treatments to alleviate his symptoms despite an ability to do so.[2]  AR at 48-50.  The Court finds that the ALJ did not err in considering any of these factors to determine Plaintiff's credibility.

i.     Plaintiff's Inconsistent Factual Statements

The ALJ noted several discrepancies within Plaintiff's testimony and between his testimony and the record on a range of issues, including: his intelligence and aptitude; his history of headaches; his desire to obtain counseling; his history and frequency of drug use; his reasons for leaving his previous job; his history of paranoia; and his claims

---

[2] In addition to these factors, the ALJ also notes that Plaintiff's sister is receiving Social Security benefits and infers from this fact that Plaintiff may have had insights enabling him to obtain benefits under false pretenses.  *See* AR at 49.  Plaintiff responds that this type of speculation was unjustified, especially given his extremely limited contact with his sister.  *See doc. 19* at 15-16 (citing AR at 480).  The Commissioner does not dispute this argument, instead urging the Court to uphold the credibility determination based upon the other factors considered.  *Doc. 23* at 8.  Because the Court finds the ALJ's determination to be supported by legitimate factors and substantial evidence in the record, an erroneous reference to Plaintiff's relationship with his sister is harmless.  *See Pickup v. Colvin*, 606 F. App'x 430, 432-34 (10th Cir. 2015) (affirming credibility determination which was "on balance, proper and supported by substantial evidence" despite rejecting two reasons given by the ALJ).

of molestation.  AR at 45, 48-49.  SSA guidance has also instructed that a "strong

indication of the credibility of an individual's statements is their consistency, both

internally and with other information in the case record."  SSR 96-7p.  As noted above,

the ALJ identified a multitude of inconsistent statements made by Plaintiff and

concluded that these statements demonstrated a lack of reliability in his testimony.  AR

at 45, 48-49.  The majority of these contradictions were demonstrated by citation to

evidence on the record.  *See, e.g.* AR at 469, 504 (Dr. Owen's statement that Plaintiff's IQ

was borderline/low average contradicting Plaintiff's statement that he had done very

well on college placement exams); AR at 566, 603 (Plaintiff's statement that he desired to

participate in therapy contradicting a previous statement that he believed counseling

would be ineffective); AR at 465, 481, 503, 565, 602-03 (multiple contradicting statements

by Plaintiff as to his history of drug use); AR at 564, 578, 619-20 (Plaintiff's contradicting

statements as to why he stopped working at Sam's Club); AR at 577, 603 (Plaintiff's

inconsistent statements as to whether he currently experiences paranoia).

    While Plaintiff correctly notes that a lack of consistency is not necessarily proof

that an individual is not credible in all cases, he has failed to show how the ALJ erred in

evaluating consistency in this case.  *See doc. 19* at 14-15.  Instead, he merely argues that

the evidence could support a reasonable explanation of Plaintiff's inconsistent

statements regarding his paranoia.  *Id.* at 15.  However, the mere possibility of drawing

an alternative conclusion from the evidence does not prevent these findings from being

supported by substantial evidence.  *Lax*, 489 F.3d at 1084.  Thus, the Court holds that the

ALJ did not err in his conclusions regarding consistency.

      ii.    <u>Plaintiff's Daily Activities</u>

The ALJ pointed to evidence that many of Plaintiff's daily activities, including

the ability to concentrate while playing video games for extended periods of time,

remained intact. AR at 50.  Under federal regulations, an ALJ is required to consider a

claimant's daily activities.  20 C.F.R. § 416.929(c)(3)(i).  Here, the ALJ concluded that

Plaintiff's daily activities demonstrated the ability to concentrate for extended periods

and undermined Plaintiff's statements regarding his inability to function.  AR at 50.

These findings are supported by external evidence, including testimony from the

Plaintiff that he regularly reads and plays video games and is capable of performing his

daily activities without assistance.  *See* AR at 80-81, 85, 618.  Accordingly, this analysis

supports the ALJ's ultimate determination regarding credibility.

      iii.    <u>Plaintiff's Failure to Follow Treatment Recommendations</u>

The ALJ has a similar obligation to consider what medication or treatments a

claimant uses to alleviate symptoms.  20 C.F.R. § 416.929(c)(3).  This inquiry includes

consideration of a claimant's decision not to take prescribed medication or treatment

which would alleviate his impairments.  *See* SSR 96-7p (instructing that an "individual's

statements may be less credible if the level or frequency of treatment is inconsistent

with the level of complaints, or if the medical reports or records show that the

individual is not following the treatment as prescribed and there are no good reasons for this failure"). In his credibility assessment, the ALJ provided specific evidence in the record demonstrating multiple occasions in which Plaintiff refused to take prescribed medication, left medical facilities without obtaining treatment, or failed to attend scheduled treatment appointments. AR at 45-48; s*ee, e.g,* AR at 478-85, 518-20, 565. The evidence from the record also indicates that the prescribed treatment, when taken, was effective at relieving Plaintiff's impairments. *See* AR at 518, 565.

Plaintiff claims that despite this evidence, the ALJ erred in failing to evaluate his explanation for not complying with treatment recommendations, namely forgetfulness as a symptom of his impairments and lack of financial ability to obtain care. *Doc. 19* at 16-17. However, the ALJ considered evidence demonstrating that Plaintiff independently sought care and that he had access to health insurance in concluding that Plaintiff had the ability to access care and that his non-compliance was the result of a personal choice. AR at 49. Accordingly, the ALJ's consideration of Plaintiff's refusal to follow treatment recommendations when determining credibility was proper. *See* SSR 96-7p.

## VI.   CONCLUSION

Plaintiff has failed to establish that the ALJ committed reversible error.

Accordingly, Plaintiff's Motion to Remand to Agency for Rehearing (*doc. 19*) is

DENIED, and this action is DISMISSED with prejudice.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**